IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TYRONE GILL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11 C 7868 |
| | ) | |
| MICHAEL ATCHISON, Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On November 17, 2005, petitioner Tyrone Gill ("Gill") was convicted after a jury trial in the Circuit Court of Cook County of first-degree murder for the 2004 stabbing of Nissan Nash ("Nash"). Gill subsequently was sentenced to 60 years in prison. Before the court is Gill's "Petition for Writ of Habeas Corpus – Person in State Custody" pursuant to 28 U.S.C. § 2254. (Dkt. No. 1 ("Petition").) For the reasons stated herein, Gill's Petition is denied.

BACKGROUND

The following facts are taken from the Illinois Appellate Court's ruling affirming Gill's conviction and sentence. (Dkt. No. 12, Ex. A, *People v. Gill*, No. 1-06-0777 (Ill. App. Ct. Dec. 12, 2007) (unpublished order pursuant to Illinois Supreme Court Rule 23) ("Direct Appeal").)

<u>1.</u>     <u>Proceedings Before the Trial Court</u>

At Gill's trial, the state presented evidence showing that Gill fatally stabbed Nash, his girlfriend at the time. Gill was arrested later the same day after being found in an apartment located at 4907 West Race in Chicago. His arrest was made without a warrant.

Gill moved to quash his arrest and subsequent line-up identification based on lack of probable cause. Detective Timothy O'Brien ("Detective O'Brien") testified for the state at the hearing. Detective O'Brien testified that, in the course of investigating Nash's murder, information was collected from eyewitnesses that Nash was riding in a "dark colored Ford Taurus" and that she exited the vehicle by jumping out while it was still in motion. The driver of the vehicle, described as a "black male, around age 30, who was about 5'10" tall, with a medium complexion," followed Nash out of the vehicle, chased after her and, after knocking her to the ground, stabbed her multiple times. Nash's friend and her cousin related to the police that Nash had been dating a man named "Tyrone," who drove a blue 1994 Ford Taurus and whose last name was similar to "Gibbs." According to these witnesses, Nash and Tyrone had a history of domestic violence in their relationship, and Tyrone was known to "always carr[y] a large style knife in the front passenger compartment of [his] vehicle." Additionally, Detective O'Brien received an anonymous tip that someone named "Tyrone" was in hiding at 4907 West Race, that this person could be identified by a tattoo of a panther on his right arm, and "had just committed a murder." Based on this information, Detective O'Brien, along with Detectives O'Donnell and Struck, went to the specified address, knocked on the door, and consent was given for them to enter the dwelling. After interviewing Gill, who at that time identified himself as "Terry," the detectives requested that he remove his shirt. He did so, voluntarily, revealing a tattoo of a panther and the word "TY" on his right arm. While still in the dwelling, Gill subsequently admitted that his name was Tyrone. Detective O'Brien also testified that he saw what he

believed to be dried blood under Gill's fingernails and proceeded to place Gill under arrest. The trial court ultimately denied Gill's motion to quash.

After the Assistant State's Attorney presented evidence on behalf of the People of Illinois and rested its case, Gill's trial counsel moved for a directed verdict which was denied by the trial court. (Dkt. No. 12, Ex. O ("Report of Proceedings") X35.) Gill was convicted after a jury trial at which he was represented by counsel. Following conviction but preceding sentencing, Gill filed a communication with the Attorney Registration Disciplinary Commission of the Supreme Court of Illinois against his trial counsel. (Report of Proceedings at DD-4.) On the day of sentencing Gill filed a motion to dismiss counsel based on a theory of ineffective assistance of trial counsel. (*Id.* at DD-5.) The trial judge held a hearing reviewing each of Gill's allegations against his trial counsel. (*Id.* at DD-7.) Those allegations included: (1) trial counsel had already made a decision as to Gill's guilt since their first encounter, (2) trial counsel failed to keep Gill informed as to defense strategic decisions, (3) trial counsel failed to investigate the crime scene, (3) trial counsel failed to bring up the background of a prosecution witness, (5) trial counsel failed to cross-examine prosecution witnesses who allegedly perjured themselves, (6) trial counsel failed to put forth an effort to truly defend Gill, and (7) trial counsel asked Gill to come up with a defense. (*Id*. at DD-9-19.) After reviewing each point with Gill and his trial counsel, the trial court denied Gill's motion to dismiss counsel. (*Id.* at DD-23.)

2. Direct Appeal

Gill was represented by the State Appellate Defender on appeal. However, the State Appellate Defender moved for leave to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), based on an examination of the record revealing the existence of no issues of merit to justify an argument on appeal. Gill filed a response to the motion, pro se, claiming that: (1) his

constitutional right to counsel on direct appeal was violated; (2) the two-day delay he experienced before receiving a probable cause hearing after his initial arrest was unconstitutional because he was held solely for investigative purposes; and (3) the State of Illinois elicited perjured testimony. The Illinois Appellate Court rejected these arguments, granted the State Appellate Defender's motion for leave to withdraw, and affirmed Gill's conviction. (Direct Appeal, 3-6.) Gill then proceeded, pro se, to file a petition for leave to appeal ("PLA") to the Illinois Supreme Court. Gill raised the identical claims from his direct appeal in his PLA. (Dkt. No. 12, Ex. D, at 1 ("PLA on Direct Appeal").) The Illinois Supreme Court denied his PLA on March 26, 2008. (Dkt. No. 12, Ex. E, *People v. Gill*, 888 N.E.2d 1186 (Ill. 2008)).

3. Post-Conviction Petition

On October 3, 2008, Gill filed a pro se post-conviction petition in the Circuit Court of Cook County. (Dkt. No. 12, Ex. F ("Post-Conviction Petition"), C19-C43.) In that petition, Gill argued: (1) police lacked probable cause to justify his warrantless arrest; (2) the delay between his arrest and probable cause hearing was unreasonable; (3) direct appellate counsel was ineffective for failing to raise several "apparent and obvious" claims, including the general claim of "trial counsel ineffectiveness;" (4) trial counsel was ineffective for: failing to object "when circuit judge directed verdict against [Gill]",[1] failing to visit the crime scene, failing to corroborate Gill's version of events, failing to challenge DNA evidence linking Gill to Nash's murder, and entering into stipulations regarding identification of blood samples collected inside Gill's car and the chain of custody of physical evidence; (5) the evidence of his guilt presented at trial was insufficient to support a conviction; (6) the state elicited perjured testimony; and (7) his

---

[1] Gill appears to be confused on this point, as no directed verdict was entered in his case. Perhaps Gill intended to argue that trial counsel was ineffective for failing to seek reconsideration of the judge's ruling denying Gill's motion for a directed verdict.

sentence of 60 years was excessive. The Circuit Court of Cook County dismissed Gill's petition on November 14, 2008 as "frivolous and patently without merit." (Dkt. No. 12, Ex. G, *People v. Gill*, No. 04 CR 17326, at C66 (Cir. Ct. Cook Cty. Nov. 14, 2008).)

Gill, now represented once again by the State Appellate Defender, appealed the denial of post-conviction relief to the state appellate court, arguing: (1) the trial court erred in dismissing his post-conviction petition because he had set forth the "gist" of a meritorious perjury claim in the petition; (2) the trial court erred in dismissing his post-conviction petition because it overlooked his perjury claim; and (3) the statute pursuant to which the trial court imposed monetary sanctions on petitioner for filing a frivolous post-conviction petition violated due process and equal protection. (Dkt. No. 12, Exs. H-K.) The Illinois Appellate Court affirmed the dismissal of the Post-Conviction Petition on January 19, 2011. (Dkt. No. 12, Ex. L, *People v. Gill*, No. 1-08-3585 (Ill. App. Ct. Jan. 19, 2011) (unpublished pursuant to Illinois Supreme Court Rule 23) ("Post-Conviction Appeal").)

Gill, still represented by the State Appellate Defender, proceeded to file a PLA with the Illinois Supreme Court. (Dkt. No. 12, Ex. M ("Post-Conviction PLA").) The single claim of the Post-Conviction PLA was that the statute that permits trial courts to impose fees on prisoners who file frivolous lawsuits violates due process and equal protection. The Illinois Supreme Court denied Gill's Post-Conviction PLA on May 25, 2011. (Dkt. No. 12, Ex. N, *People v. Gill*, 949 N.E.2d 1100 (Ill. 2011) (Table).)

4. <u>Claims at Issue Before this Court</u>

The court notes at the outset that the claims raised in the Petition are somewhat difficult to follow, because multiple claims may be read into what is characterized by Gill as one claim. In its answer, (Dkt. No. 11 ("Answer")), Respondent presented the substance of the Petition in

the form of eleven (11) separate claims. (Answer at 6-7.) Gill has apparently ratified Respondent's characterization of the claims before the court, by adopting them verbatim into his reply. (Dkt. No. 17 ("Reply").) (Compare Answer at 6-7, Reply at 4, 6, 13, 16, 21, 22, 24, 25, 26.)

Those claims are: the police lacked probable cause to arrest Gill without a warrant ("Claim 1"); the length of delay between Gill's arrest and probable cause hearing was unreasonable because it was more than 48 hours ("Claim 2"); the delay between Gill's arrest and probable cause hearing was unreasonable because it was for the sole purpose of gathering additional evidence to justify his arrest ("Claim 3"); Gill's appellate counsel was ineffective for failing to raise claims 2 and 3 on direct appeal ("Claim 4"); Gill's trial counsel was ineffective for failing to object to the two-day delay between Gill's arrest and the probable cause hearing ("Claim 5"); Gill's trial counsel was ineffective for failing to seek an impartial fitness examination ("Claim 6"); Gill's trial counsel was ineffective for failing to investigate the crime scene ("Claim 7"); Gill's trial counsel was ineffective for failing to call Henri LaBrunche[2] as a witness ("Claim 8"); Gill's trial counsel was ineffective for failing to investigate and impeach prosecution witnesses ("Claim 9"); Gill was unfit to stand trial ("Claim 10"); and the trial court erred in denying Gill's request for new counsel ("Claim 11").

LEGAL STANDARD

Federal habeas review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Julian v. Bartley*, 495 F.3d 487, 492 (7th Cir. 2007). Under the AEDPA, relief may be granted only if the state court's ruling: (1) was "contrary to, or involved an

---

[2] Gill has referred to this witness in his handwritten Petition as "Henri LaBrunche," *see* Petition at 31, but later in his typed Reply as "Henry LaBrunch," *see* Reply at 23-24. For ease, the court adopts the spelling from the original Petition.

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The state court's findings of fact are presumed to be correct unless the petitioner presents the court with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Additionally, federal courts may not grant habeas relief for violations of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Habeas petitioners may not present a claim in federal court until they exhaust each claim through the state court appeals process. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). To exhaust a claim, the petitioner must present it through either one complete round of direct review or one complete round of post-conviction review. *Id.* To be properly presented to the state courts, the federal nature of each claim must be apparent from the facts and the legal principles presented. *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). Failure to exhaust a claim in state court constitutes a procedural default. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

Federal courts will review procedurally defaulted claims only if the petitioner can show that there is cause for the default and actual prejudice as a result of the alleged violation of federal law, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Cause requires an objective factor, external to the defense, that prevented a petitioner from presenting the claim earlier; prejudice means that the alleged error "so infected the entire trial that the resulting conviction violates due process." *Id.* (internal citations omitted).

On March 20, 2012, after Respondent filed his Answer but before Gill's Reply, the United States Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). However, this "narrow exception" only applies in states "[w]here . . . the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial." *Id.* Cause may be established in such cases either, (1) where the state courts failed to appoint counsel for the initial-review collateral proceeding, or (2) where appointed counsel at the initial-review collateral proceeding was ineffective according to the standards articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 1318. In either scenario the prisoner must also "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one . . . [which] has some merit." *Id.* With these principles in mind, the court considers each of Gill's habeas claims.

## ANALYSIS

1. <u>Claims that Are Procedurally Defaulted</u>

As a preliminary matter, the court must determine which claims Gill has preserved and which claims he has defaulted. The court agrees with Respondent that most of Gill's claims are procedurally defaulted. To preserve a claim for federal habeas review, the state prisoner must "assert his federal claim through one complete round of state-court review." *Malone*, 538 F.3d at 753. For prisoners in Illinois, this requires that they "have [] appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). Gill has asserted four claims in total through one complete round of state-court review: (1) his constitutional right to counsel on direct

appeal was violated; (2) the two-day delay he experienced before receiving a probable cause hearing was unconstitutional because he was held solely for investigative purposes; (3) the State of Illinois elicited perjured testimony, and (4) the statute that permits trial courts to impose fees on prisoners who file frivolous lawsuits violates due process and equal protection. Only one of these claims, however, is before this court: the constitutionality of the two-day delay between Gill's arrest and his probable cause hearing (Claim 3). Claims 1, 2, 4-11 are thus procedurally defaulted, leaving only Claim 3 for further review.

### a. Excuse for Ineffective Assistance of Trial Counsel Claims (Claims 5-9)

Gill asserts five claims which may be considered ineffective assistance of trial counsel claims: his trial counsel was ineffective for failing to object to the two-day delay between Gill's arrest and his probable cause hearing (Claim 5); his trial counsel was ineffective for failing to seek an impartial fitness examination (Claim 6); his trial counsel was ineffective for failing to investigate the crime scene (Claim 7); his trial counsel was ineffective for failing to call Henri LaBrunche as a witness (Claim 8); and his trial counsel was ineffective for failing to investigate and impeach prosecution witnesses (Claim 9). Gill argues that these claims are all excused from procedural default in light of the Supreme Court's ruling in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). (Reply at 7-16.)

As noted above, *Martinez* provides a narrow exception to traditional procedural default rules as applied to ineffective assistance of trial counsel claims. This exception only applies in states where an initial-review collateral proceeding is the defendant's "first occasion to raise a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315, 1317. Illinois is not such a state. In Illinois, defendants may raise ineffective assistance of trial counsel claims on direct appeal if the "facts which form the basis for these contentions were contained in the trial record."

*People v. Foster*, 660 N.E.2d 951, 958 (Ill. 1995). Moreover, if the trial record is incomplete to form the basis of an ineffective assistance of trial counsel claim, the defendant also has the ability to file a *Krankel* post-trial motion, pro se, to further develop the record on the issue prior to direct appeal. *People v. Krankel*, 464 N.E.2d 1045, 1049 (Ill. 1984); *see also People v. Moore*, 797 N.E.2d 631, 637 (Ill. 2003) (explaining that under *Krankel* "the trial court should first examine the factual basis of the defendant's claim . . . . if the allegations show possible neglect of the case, new counsel should be appointed."); *People v. Cummings*, 813 N.E.2d 1004, 1012 (Ill. App. Ct. 2004) (when *Krankel* is invoked trial courts must "afford the defendant an opportunity to specify and support his complaints").

An analysis of the relevant claims shows that Gill had the knowledge and opportunity to raise his ineffective assistance of trial counsel claims before his post-conviction proceedings – either post-trial under *Krankel*, or on direct appeal. For example, Claim 5 (failure to object to delay between arrest and probable cause hearing) relies on Gill's trial counsel's failure to take an action at trial; something clearly ascertainable from the trial record. Gill could, and in fact did, raise this issue on direct appeal. Additionally, Claims 6-9 were raised by Gill prior to the end of trial at a *Krankel* hearing where the trial court reviewed Gill's allegations and addressed the question of whether trial counsel had been constitutionally ineffective. (Dkt. No. 12, Ex. P ("Common Law Record") Part 2, C49-52; Report of Proceedings at D19-20.) As discussed above, *Martinez* applies only where petitioner's first opportunity to raise an ineffectiveness claim is at an initial-review collateral proceeding. In the words of Judge Gettleman, that "is not the case here." *Blair v. Rednour*, No. 11 C 4108, 2012 WL 1280831, at *4 (N.D. Ill. Apr. 11, 2012). Thus, although *Martinez* acknowledges that, "[w]ithout the help of an adequate attorney, a prisoner will have . . . difficulties vindicating a substantial ineffective-assistance-of-trial-

counsel claim," *Martinez*, 132 S.Ct. at 1317, by its own terms it is simply not applicable to Gill's situation. Accordingly, the procedural default of Claims 5-9 cannot be excused for cause under *Martinez*.

Gill further argues that his procedural default of Claims 5-9 should be excused so as to prevent a fundamental miscarriage of justice. A fundamental miscarriage of justice occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Gill provides little substantive support for his assertion of a fundamental miscarriage of justice. In Claim 8, Gill states that further trial counsel investigation of five prosecution witnesses "would have provided exculpatory evidence that [Gill] did not commit this crime and that [the witnesses] had informed the police and states [sic] attorney that they were unable to identify [Gill] as the perpetrator and that it was someone else who killed [Nash]." (Reply at 24.) When asserting innocence, a petitioner "must support the . . . claim 'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010) (quoting *Schlup*, 513 U.S. at 324). Gill, however, fails to provide new evidence of his innocence in any form, including corroborating witness affidavits. Simply claiming innocence without more is not enough to excuse default. *Id*. at 319. Therefore, Gill's procedural default of Claims 5-9 is not excused based on a fundamental miscarriage of justice. Because Gill has failed to make a sufficient showing of cause and prejudice under *Martinez*, or of actual innocence, the court will not consider the merits of Gill's defaulted claims for ineffective assistance of trial counsel.

      b.  <u>Excuse for Claims 1, 2, 4, 10, 11</u>

As noted above, Gill can excuse the defaults of his other, non-ineffective assistance of trial counsel claims only if he can show either cause for the default and actual prejudice, or that the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Where a petitioner fails to argue excuse for his procedural default based on cause and prejudice or a fundamental miscarriage of justice, the court cannot consider his claim. *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008). Cause requires an objective factor, external to the defense, that prevented a petitioner from presenting the claim earlier; prejudice means that error "so infected the entire trial that the resulting conviction violates due process." *Smith*, 598 F.3d at 382 (internal citations omitted).

In Claim 1, Gill argues that his procedural default should be excused because, "[T]he issues of probable cause for his arrest was [sic] was not preserved in a post-trial motion and because [he] had no attorney on direct appeal." (Reply at 4.) Gill argues that Claim 2 should be excused from default because it "would and should have been adjudicated on direct appeal by his trial and direct appeal attorney." (*Id*. at 6) Similarly, Gill contends that Claim 10 should be excused because "he could not provide the support his attorney needed to present a complete defense and there existed an adversarial relationship with his trial court attorney at the time of trial." (*Id*. at 26) Finally, Gill posits that Claim 11 should likewise be excused from default because he "did not know of all the neglect he suffered until he was informed by counsel at the end of trial that [counsel] had failed to subpoena five witnesses who were eye witnesses th [sic] the actual murder." (*Id.* at 27.) Nothing presented by Gill rises to the level of an objective factor *external to the defense* required for finding cause for the default. *Smith*, 598 F.3d at 382. In fact all of the reasons given for default are *internal* to Gill's defense. Because Gill has not met the

standard for cause for these claims, the court need not evaluate the alleged prejudice suffered. *Coleman*, 501 U.S. at 750.

Finally, Gill again seeks refuge under *Martinez* to excuse his default in Claim 4 where he alleges that his appellate counsel was ineffective for failing to raise Claims 2 and 3 on direct appeal. (Reply at 14.) For the reasons discussed previously, *Martinez* is inapplicable to Gill's claims. Furthermore, because Gill does not argue that Claims 1, 2, 4, 10, or 11 should be excused based on a fundamental miscarriage of justice, the court cannot reach this question. *Crockett*, 542 F.3d at 1193. Therefore, because Gill has not made a sufficient showing of either cause and prejudice or actual innocence, this court will not consider his defaulted bases for Claims 1, 2, 4, 10, and 11.

3.   Fourth Amendment Claim (Claim 3)

Gill's third claim, that the delay between his arrest and probable cause hearing was unreasonable because it was for the sole purpose of gathering additional evidence to justify his arrest, is not procedurally defaulted as it was presented through one complete round of state review. *Malone*, 538 F.3d at 753. However, Respondent argues that it should be nonetheless barred under *Stone v. Powell*, 428 U.S. 465 (1976). The court agrees.

This is a constitutional claim under the purview of the Fourth Amendment which entitles defendants to probable cause hearings promptly after arrest. *Gerstein v. Pugh*, 420 U.S. 103, 124-25 (1975). Generally, hearings held within 48 hours are reasonable under the Fourth Amendment, *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), unless there was a delay "chiefly . . . to gather additional evidence to justify the defendant's arrest," *People v. Nicholas*, 842 N.E.2d 674 (Ill. 2005). Even if there was such a delay, however, if a habeas petitioner has been previously afforded "an opportunity for full and fair litigation of a Fourth

Amendment claim, [he] may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494; *see also Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008) (full and fair opportunity met when claim was presented to each state court in the direct appeal process); *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005) (if the petitioner was afforded a full and fair opportunity, federal courts "may not enforce the exclusionary rule"); *Cabrera v. Hinsley*, 324 F.3d 527, 530-31 (7th Cir. 2003) (unless the state Fourth Amendment review was a "sham," federal courts "will not examine whether the judge got it right").

Here, Gill cannot claim he was denied a full and fair opportunity to present his Fourth Amendment claim as he properly presented it to each level of review along the state appeals process. *Ben-Yisrayl*, 540 F.3d at 552. Moreover, the state review cannot properly be characterized as a sham. On direct appeal, the Illinois Appellate Court determined that the delay between Gill's arrest and his probable cause hearing was not unreasonable or used solely to gather additional evidence, because sufficient evidence already existed to satisfy probable cause at the time of his arrest. (Direct Appeal at 4.) In support of this conclusion, the court cited the description of Gill's vehicle and concealed knife, the eyewitness description of the perpetrator, the account of Nash's friend and cousin describing Nash's boyfriend "Tyrone" and their history of domestic violence, and the anonymous tip directing the police to find Gill at 4907 West Race, as someone with a panther tattoo, who "had just committed murder." (*Id*. at 4-5.) Because Gill has already received a full and fair litigation of his Fourth Amendment claim, this court cannot consider the merits of Claim 3 as a basis for habeas corpus relief. *Stone*, 428 U.S. at 494.

4. Certificate of Appealability

Upon issuing an order denying habeas relief, this court must determine whether to issue a certificate of appealability for any of the claims. *See* Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. This requires that the applicant make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If the claim is denied on the merits, the applicant must show that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If the claim is denied on procedural grounds, the applicant must show that reasonable jurists would find it debatable whether the claim states the denial of a constitutional right, and that they would find the procedural ruling debatable as well. *Id.* In this case, the court has denied all of Gill's claims on procedural grounds. Because the court finds that the relevant case law clearly compels the result reached here, the court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons stated herein, Gill's "Petition for Writ of Habeas Corpus – Person in State Custody" (Dkt. No. 1) is denied in its entirety, and the court declines to issue a certificate of appealability.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: July 2, 2012